**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 02-177-C**

**UNITED STATES OF AMERICA *ex rel.* ROBERT GROBER,**                    **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**SUMMIT MEDICAL GROUP, INC., ET AL.,**                    **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court for approval of a settlement agreement disposing of claims arising under the False Claims Act and on the Relator's motion for sanctions. The court, having reviewed the record and being otherwise sufficiently advised, will approve the settlement agreement. The total value of the settlement agreement is $79,401.44. The court will deny the motion for sanctions.

**The Settlement Agreement:**

This is a *qui tam* action pursuant to the False Claims Act, 31 U.S.C. § 3729, *et. seq.*, concerning overbilling of Medicare and Medicaid programs by Summit Medical Group ("Summit"). Under the False Claims Act, the government may collect treble damages from defendants who overbill Medicare and Medicaid. It may also collect civil penalties ranging from $5,000 to $10,000 per violation. 31 U.S.C. § 3729. This court has already recognized that the government need not impose civil penalties against a defendant where the imposition of penalties would interfere with its ability to settle the case. (DE 41, at 8-9). Additionally, to facilitate settlement, the government may accept double damages instead of treble damages.

The settlement agreement in this case requires Summit to pay $79,401.44 to the United States. In addition, the agreement requires Summit to adhere to a corporate compliance program (the "compliance program") for three years. All parties agree that $79,401.44 – which is twice the agreed single damage amount – is a fair cash settlement. The Relator, however, argues that the compliance program is a non-cash proceed of the settlement and that its value should be considered in determining the total value of the settlement. He argues that the value of the compliance program is the defendants' cost of implementing that program, which is $925,167 per year over its three-year life.

The total value of an FCA settlement may include the dollar value of non-cash proceeds so long as they were offered in settlement of the claim. *United States ex rel. Barajas v. Northrop Corp*, 258 F.3d 1004, 1013 (9th Cir. 2001); *United States ex rel. Thornton v. Science Applications Int'l Corp.*, 207 F.3d 769, 771-72 (5th Cir. 2000); *United States ex rel. Nudelman v. Int'l Rehabilitation Assocs, Inc.*, 2005 U.S. Dist. LEXIS 9605 (E.D. Pa. 2005). The value of a non-cash proceed is its value to the government, which may be calculated by looking at what the government would otherwise pay for a particular good or service. *Barajas*, 258 F.3d at 1013. Where a non-cash proceed's value is not readily ascertainable, the court cannot consider it in determining the total value of the settlement. *Thornton*, 207 F.3d at 772 n. 10.

In this case, even if the court were to agree that the compliance program is a

2

non-cash proceed of the settlement agreement, there is no evidence that the compliance program offers any measurable monetary benefit to the United States. Therefore, the court will not consider the compliance program in determining the total value of the settlement. After reviewing the settlement agreement and the record as a whole, the court finds that the settlement agreement is fair, adequate, and reasonable under all of the circumstances. Furthermore, the court finds that the total value of the settlement is $79,401.44.

**The Motion for Sanctions:**

To assist the United States with the prosecution of this matter, the Relator provided the government with three binders of documents. In December, 2004, after the defendants and the government had negotiated the settlement agreement, the United States provided the defendants with copies of these documents. The Relator did not learn of this disclosure until February, 2006. The parties disagree about the tactical value of these documents and whether they are privileged. The Relator argues that the disclosure of eleven documents has revealed a "significant part of [his] playbook" to the defendants. Accordingly, he requests a battery of sanctions – including monetary sanctions, default, and the removal of opposing counsel – to ameliorate any negative effects from the disclosure. The documents at issue include the following:

1. A list prepared by the Relator's counsel identifying what he perceived to be "weak" claims under the FCA.
2. Excerpts from the Health Care Financing Administration's "Carrier's Manual." This document relates to the claims under the FCA.

3

3.     A copy of a state administrative regulation related to the false billings. No memorandum is attached to this regulation.

4.     A list of the defendant's officers and employees. The names of certain individuals are circled. However, the document does not indicate the significance of these circled names.

5.     A document titled "Detailed Information About St. Elizabeth Medical Center, Inc." No memorandum of law is attached to this document.

6.     A second document titled "Detailed Information About Summit Medical Group, Inc." No memorandum of law is attached to this research.

7.     A letter to the government identifying issues, but not facts, related to the over-billing.

8.     A chronology of documents and events prepared by counsel.

9.     Memoranda of meetings between the Relator and the defendants' personnel.

10.    A chronology of communication between the Relator's attorney and defense counsel detailing events leading to the Relator's termination. This document maps out the facts supporting the Relator's retaliation claim.

11.    A memorandum analyzing the False Claims Act as it applies to this case.

Having reviewed the documents, the court does not believe that the disclosure is as damaging as the Relator suggests. Five of the eleven documents relate solely to the FCA claim, which was settled pending court approval prior to the disclosure. Three additional documents contain information that was already in the defendants' possession; they do not contain counsel's mental impressions, conclusions, opinions, or legal theories. Although the remaining documents contain factual information concerning the retaliation claim, they, too, do not offer the defendants any insight into counsel's opinions, conclusions, or theories of the case.

The court has the authority to sanction a party that acts in bad faith during the course of litigation or that fails to follow the rules of civil procedure. *See, e.g., Banner v. City of Flint*, 99 Fed. Appx. 29, 36-37 (6th Cir. 2004); Fed. R. Civ. P. 37.

4

Critical to the decision to award sanctions is whether the moving party has suffered prejudice. *See, e.g., Marques v. Gabriel*, 136 F.R.D. 137 (S.D. Ohio 1991); *Wilson v. Volkswagen of Am., Inc.*, 561 F2d. 494, 504 (4th Cir. 1977) ("It is the normal rule that the proper sanction must be no more severe than necessary to prevent prejudice to the movant"). *See also* Fed. R. Civ. P. 37(c) (recognizing discovery sanctions are inappropriate absent some showing of prejudice). In reviewing the plaintiff's motion for sanctions, the court finds the *Marques* opinion helpful.

In *Marques*, plaintiff's counsel interviewed several witnesses in preparation for trial. These interviews were attended by a stenographer who prepared transcripts that she later sold to defense counsel. After discovering the disclosure, plaintiff's counsel moved for sanctions, including default and dismissal of the defendant's law firm, arguing that defense counsel had misappropriated his confidential work product. Ultimately, that court imposed monetary sanctions and barred the defense from using any information obtained from the transcripts that would not have been otherwise discoverable. The sanction was designed to punish defense counsel for purchasing the plaintiff's work product while still allowing the defendant to present a defense. 136 F.R.D. at 139.

The facts of this case are not as egregious as those in *Marques*. In this case, there is no evidence that the documents at issue were bought, sold, or otherwise transferred in bad faith. Rather, the United States provided documents to the defendants in an attempt to comply with its understanding of the disclosure

requirements of the FCA. To the extent that the disclosure was improper, the Relator has suffered no prejudice. The majority of the documents relate either to the FCA claim – the settlement of which the court has approved – or contain innocuous information that the defendants already possessed. Although three documents contain factual information related to the retaliation claim, this information would have been obtained by a reasonably competent attorney during the course of discovery. *See Marques*, 136 F.R.D. at 139.

It may have been more efficient for the court and the parties had the government contacted the Relator before turning documents over to the defendants. Nevertheless, because the Relator is not prejudiced in this case, the court will not sanction any party. Accordingly,

**IT IS ORDERED** that the settlement agreement is **APPROVED.** The total value of the proceeds of the settlement is $79,401.44.

**IT IS FURTHER ORDERED** that the United States shall file a motion to dismiss the False Claims Act claims in this case within 20 days of the entry of this order. Response and reply times for that motion shall run according to the local rules. Alternatively, the parties may file a proposed agreed order.

**IT IS FURTHER ORDERED** that the Relator's motion for sanctions (DE 114) is **DENIED**.

**IT IS FURTHER ORDERED** that the motions to quash subpoenas related to the motion for sanctions (DE 148, 153) are **GRANTED**.

6

**IT IS FURTHER ORDERED** that the defendants' motion to expedite ruling for leave to file a supplemental pre-hearing brief (DE 111) is **DENIED AS MOOT**.

Signed on  May 4, 2006

*Jennifer B. Coffman*

**Jennifer B. Coffman, Judge**
**United States District Court**