UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 02-177-C**

**UNITED STATES OF AMERICA *ex rel.* ROBERT GROBER,**              **PLAINTIFF,**

**V.**               **MEMORANDUM OPINION AND ORDER**

**SUMMIT MEDICAL GROUP, INC., ET AL.,**              **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the Relator's motion to rescind this court's order compelling arbitration. The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**Background:**

The Relator, Robert Grober, brought various claims against his former employers, including a claim for retaliation under the whistle-blower provision of the False Claims Act. On September 29, 2005, the court ordered that the parties comply with the arbitration agreement in Grober's contract, which holds that "any controversy between the parties or claim by one party against the other . . . shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ['AAA']." These rules provide that "all expenses of the arbitration . . . shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." Other documents state that the AAA may reduce, defer, or waive its fees if a party cannot pay due to financial hardship,

and that it has neutrals that may serve at reduced fees or for free.

On March 24, 2006, Grober received a bill for $42,175 from the AAA which covers his share of the estimated cost of arbitration. With the instant motion, Grober renews his objection to the arbitration agreement, arguing that it is unconscionable in practice. Specifically, he argues that his share of the arbitration – $42,175 – is prohibitively expensive and that the AAA's cost-splitting provisions are improper and render the entire agreement unenforceable. To the extent that the arbitration agreement imposes prohibitive costs on Grober, the defendants argue that the appropriate remedy is to sever the cost-splitting provision from the rest of the arbitration agreement.

**Discussion:**

Public policy favors arbitration as a method for settling disputes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Nevertheless, the court may decline to enforce an arbitration agreement if the costs of arbitration are so great that they would deter potential litigants from vindicating their rights through arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90-91 (2000); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659 (6th Cir. 2003). Similarly, where a cost-splitting provision would deter a potential litigant from pursuing a claim, the court may not enforce that provision. *Morrison*, 317 F.3d at 663-65. The court conducts these analyses on a case-by-case basis. Before declining to enforce any portion of an arbitration agreement, the court must consider whether an

individual with the plaintiff's income and resources would be deterred from arbitration in the face of high costs or the cost-splitting provision. *Id.* (explaining the revised case-by-case approach).

Nothing requires the drafter of an arbitration agreement to warn about the potential for high costs. *Green Tree*, 531 U.S. at 522. Nor does a cost-splitting provision render an arbitration agreement unenforceable. Rather, the court should give effect to the parties' stated desire to submit their dispute to arbitration. If necessary, the court may sever the cost-splitting provision from the rest of the agreement. *Morrison*, 317 F.3d at 669, 674-75; *Scovill v. WSYX/ABC Sinclair Broadcasting Group, Inc.*, 425 F.3d 1012, 1016 (6th Cir. 2005). *See also, e.g., Business Men's Assurance Co. v. Eades*, 161 S.W.2d 920, 922 (Ky. 1942) (whether a contract is severable depends on the intention of the parties, the objects to be attained, and the common sense of the situation). Here, the arbitration agreement does not warn about the potential for incurring costs. Nevertheless, it does require that the arbitration proceed according to the Commercial Rules of the AAA which, in turn, require the parties to split costs unless the arbitrator taxes costs against a party or the parties otherwise agree. Therefore, this arbitration agreement contains, in effect, a cost-splitting provision.

The defendants argue that Grober has waived his right to object to cost-splitting by not raising the issue earlier in the proceedings. This argument has some merit: Grober not only failed to raise the issue of cost-splitting in his initial objection

to the arbitration agreement, but he acquiesced to the cost-splitting agreement by paying $4,000 towards the arbitration filing fee. However, with this motion, Grober objects not only to cost-splitting in general, but to splitting an $84,350 bill. A party objecting to arbitration on the grounds of prohibitive costs must show the likelihood of incurring those costs. Speculative arguments lacking evidentiary support are to be rejected. *Green Tree*, 531 U.S. at 522. Because Grober did not receive an invoice from the AAA until March, 2006, this second objection is timely.

Grober argues that he does not have $42,175 in liquid assets and that this sum is sufficient to deter him and similarly situated individuals from vindicating their rights through arbitration. The court agrees that the sum of $42,175 is significant and likely to deter all but the most affluent individuals from proceeding with arbitration.[1] However, it appears that Grober has done nothing to mitigate these costs. First, this matter is set to be heard by three arbitrators rather than one arbitrator.[2] Second, there is no indication that Grober has requested a fee reduction or waiver from the AAA to bring the costs of arbitration in line with what a similarly

---

[1] Grober has not provided any information concerning his current income or his net worth. Accordingly, the court would have only limited ability to determine whether a similarly situated person would have been deterred by the costs of arbitration. *Cf. Morrison*, 317 F.3d at 663-65, 676.

[2] In their briefs, each party blames the other for insisting on a panel of three arbitrators, suggesting that neither party objects to a single arbitrator deciding this matter.

situated individual would be willing to pay for the opportunity to be heard.[3]

The duties of good faith and fair dealing implicit in every contract require a party to do all that it can to honor its agreement to arbitrate. A party may not complain that the costs of arbitration are prohibitive prior to taking all reasonable steps to reduce those costs. As Grober has not shown that he has taken any such steps, the court will not grant his motion for relief. Nor will it sever the cost-splitting provision referenced in the AAA rules at this time. Accordingly,

**IT IS ORDERED** that the Relator's motion to rescind (DE 158) is **DENIED**.

Because the court will not rescind its order compelling arbitration at this time, **IT IS FURTHER ORDERED** that the defendant's motion to amend (DE 173) is **DENIED**.

Signed on  July 18, 2006

**Jennifer B. Coffman, Judge**
**United States District Court**

---

[3] Grober also argues that the costs of arbitration will continue to increase because he plans to file a motion for sanctions to remedy the defendants' alleged discovery abuses. However, Grober has not shown that such a motion is necessary to the disposition of his substantive claims on their merits. Nor has he offered any evidence beyond mere speculation as to how a motion for sanctions will affect the ultimate costs of the arbitration. Therefore, the court does not credit this argument.

5